**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**


JAMES PATTON,                                          03-CV-1722-BR

          Plaintiff,                              OPINION AND ORDER

v.

TARGET CORPORATION,

          Defendant.


**LESLIE BOTTOMLY**
**MARK A. TURNER**
**NATHAN KARMAN**
Ater Wynne, LLP
222 S.W. Columbia
Suite 1800
Portland, OR 97201
(503) 226-1191

       Attorneys for Plaintiff

**JOHN M. COWDEN**
Jackson Lewis, LLP
199 Fremont Street
10th Floor
San Francisco, CA 94105
(415) 394-9400


1 - OPINION AND ORDER

**MICHAEL A. GRIFFIN**
Jackson Lewis, LLP
One Union Square
600 University Street
Suite 2900
Seattle, WA 98101
(206) 405-0404

       Attorneys for Defendant


**BROWN, Judge.**

     This matter comes before the Court on Defendant Target Corporation's Motion for Summary Judgment (#27) against both Plaintiff James Patton's two claims.  In Claim One, Plaintiff alleges Defendant violated the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, *et seq.*, by (1) failing to reemploy Plaintiff after his return from military leave, (2) demoting Plaintiff after his return from military leave; and (3) terminating Plaintiff after his return from military leave.  In Claim Two, Plaintiff alleges he was wrongfully discharged in violation of Oregon common law.

     For the reasons that follow, the Court **GRANTS** Defendant's Motion to the extent that Defendant moves for summary judgment against Plaintiff's Claim One for violation of USERRA based on Defendant's failure to reemploy Plaintiff after he took military leave, **DENIES** Defendant's Motion to the extent that Defendant moves for summary judgment against Plaintiff's Claim One for violation of USERRA based on Plaintiff's demotion and/or

2 - OPINION AND ORDER

termination, and **DENIES** Defendant's Motion as to Plaintiff's
Claim Two.


## BACKGROUND

The facts are undisputed unless otherwise noted.

Plaintiff, a West Point graduate and Oregon National
Guardsman, was hired in August 2000 as a warehouse Group Leader
(GL) at Defendant's Albany, Oregon, Distribution Center.  In 2002
Plaintiff was promoted to Group Leader II (GL-II) and assigned as
a Production Controller (PC) at the Albany Distribution Center.

Defendant has an official policy that prohibits
discrimination based on military status and frequently recruits
current and former military personnel for management positions in
its organization.  Moreover, Defendant notes it is recognized by
the United States Department of Defense (DOD) as a "5-Star
Employer" of members of the National Guard and Reserves.  Despite
Defendant's official policy, however, Plaintiff believes his
National Guard service was not viewed favorably by his immediate
supervisors.

Brent Wiest, one of Plaintiff's supervisors, was the General
Manager or Regional Director during most of the time that
Plaintiff worked for Defendant.  Plaintiff alleges Wiest often
expressed anti-military sentiments.  For instance, when military
personnel were being called to active duty in 2002, Wiest

3 - OPINION AND ORDER

expressed concern about having too many GLs who were military
personnel.  Wiest openly suggested Defendant should recruit more
heavily from Oregon universities to avoid too much exposure when
employees who were in the military had to leave for active duty.
According to Defendant, however, Weist was merely responding to a
genuine personnel issue within the company and was not expressing
animus toward employees who served in the military.  Plaintiff
also asserts he was told by other supervisors that the National
Guard was full of "weekend warriors" and, therefore, was inferior
to the active-duty military.  Plaintiff contends this unfavorable
view is indicative of Defendant's attitude toward Plaintiff's
military service.  Nevertheless, Human Resources Development
Manager Stephen Royce and other managers, including Paul Forgey,
Scott Hering, Andrew Barnes, each served in the military in
various capacities.

Plaintiff considered the GL-II position in Defendant's
organization to be a transitional one for employees who were
being considered for promotion to the next position, Senior Group
Leader (SGL).  Defendant disputes that description and maintains
GL-II is an intermediate position that does not guarantee
advancement to SGL.

In fall 2002, Plaintiff alleges a superior told him that he
was "promotable" to the SGL position.  As late as April 2003,
Plaintiff contends this statement and other similar actions by

4 - OPINION AND ORDER

his supervisors led him to believe that he was progressing satisfactorily toward a promotion to SGL.

At the Albany Distribution Center, Wiest had a significant role in deciding whether to approve or to disapprove an employee's promotion from GS-II to SGL.  As a GS-II, Plaintiff received feedback from senior managers, including Wiest and Royce, and other managers including Phil Jones, John Hartland, Ron Reynolds, Scott Hering, and Paul Forgey.  For example, in March 2003, Defendant's senior management reviewed Plaintiff's progress and performance as a GL-II.  Defendant contends the feedback from that review was overwhelmingly negative:  The reviewers attributed 15 negative "Opportunities" to Plaintiff as opposed to only three positive "Strengths."  Plaintiff's formal annual review in April 2003 mirrored this assessment.

Defendant asserts the management team responsible for evaluating Plaintiff unanimously agreed that he was not a good candidate for promotion to SGL and that he should be demoted to GL.  Royce reported the team's opinion to Miriam Steuart, Defendant's Regional Human Resources Manager, and Weist reported the team's opinion to Tom Shaw, Defendant's Regional Director.  Steuart and Shaw agreed Plaintiff should be demoted.  Although the record does not reflect exactly when Defendant made the demotion decision, Defendant contends it was in late May or early June 2003.  In late June 2003, Plaintiff was scheduled to take

5 - OPINION AND ORDER

military leave for training.  Defendant contends it decided not
to inform Plaintiff about his demotion until he returned from
leave so that his military training would not be affected by his
knowledge of the demotion.

Plaintiff took leave for military training from June 13,
2003, to July 7, 2003.  Shortly after Plaintiff reported back to
work on the morning of July 7, 2003, he received a message from
Weist asking him to come to Wiest's office for a meeting.  At the
meeting, Royce and Wiest informed Plaintiff that he was going to
be demoted to GL because he had not "progressed" as a GL-II.
Plaintiff alleges Royce also told him that a demotion was a
setback in the company and that he "fully expected" Plaintiff to
quit.  Although Plaintiff advised he would not quit and wanted to
do well as a GL, Royce suggested he take the rest of the week off
to consider whether he wanted to return in light of the fact that
he might not have a bright future with the company.

Defendant alleges Wiest informed Plaintiff that management
would communicate its decision to other employees.  Defendant
contends Plaintiff, nevertheless, ignored this "instruction" and
almost immediately began informing other employees through the
company's email system.  Plaintiff denies he was ever told to
keep quiet about his demotion.

On July 7, 2003, at 11:37 a.m., Plaintiff informed SGL Ron
Reynolds about his demotion.  Although Plaintiff also sent email

6 - OPINION AND ORDER

copies of the message to Royce and Wiest, neither of them objected to the email or told Plaintiff to stop informing others about his demotion.  At 3:19 p.m., Plaintiff emailed Marvin Hamilton, General Manager at another distribution center, and stated:  "I'm pretty disappointed, mostly because I let our team down, and also because I did not see this coming."  At 3:23 p.m., Plaintiff emailed Ryan Springer, also at another distribution center, and stated:  "I was demoted today. . . . Tell whoever you like, I'm not concerned how this sounds to anyone."

Despite his demotion, Plaintiff contends he continued to receive emails after his demotion concerning his former duties as a GL-II.  Plaintiff decided he would address this situation by sending an email to every PC in the company nationwide on July 9, 2003.  In the email, he stated:

> Fellow PCs, just to let you know I have been demoted to GL and moved out of the PC role here a[t] T558.  Reasons given were that I was not progressing on my feedback to move to SGL[], not because of anything I was doing wrong as the PC.
>
> I enjoyed the job and think the team works very well together communicating building issues.  With that, it looks like Tyler Munson will be our PC at T558, so you might want to include him in your communications.
>
> Good Luck everyone.
>
> Jim Patton
> Inbound GL

Def.'s Concise Statement Ex. 13.

7 - OPINION AND ORDER

Defendant contends Plaintiff's mass email misstated the circumstances of his demotion and caused serious disruption for those who had to answer questions from concerned managers around the country.  Royce and Wiest consulted with Steuart about Plaintiff's actions.  All three agreed Plaintiff's conduct constituted detrimental behavior under Defendant's corrective-action policies and, therefore, justified immediate termination. Royce, Wiest, and Steuart each testified Plaintiff would have been fired because of his email even if he had not taken military leave.

Shortly after his demotion, Plaintiff asked Employer Support for the Guard and Reserves (ESGR) to help him get reinstated to GL-II.  On July 10, 2003, the ESGR representative contacted Defendant.  Plaintiff asserts Defendant's representative was unresponsive and rude to the ESGR representative.  The ESGR representative recommended Plaintiff file a complaint with the Department of Labor (DOL), which Plaintiff did.  On July 11, 2003, Plaintiff asserts a DOL representative initiated a conference call with Plaintiff and Wiest.  Plaintiff contends Wiest was upset about "third-party representation" being involved in an employment dispute.

On July 14, 2003, Defendant disabled Plaintiff's email account and officially terminated him later that day.  Plaintiff was informed of the decision on July 15, 2003.  Royce told

8 - OPINION AND ORDER

Plaintiff that his email had a detrimental effect, caused his supervisors concern and embarrassment, and undermined Defendant's confidence in Plaintiff's judgment.

After cleaning out his office, Plaintiff contends he was humiliated when he was escorted out of the building on a circuitous route that led him past his former co-workers. Defendant denies any intent to humiliate Plaintiff.

On December 11, 2003, Plaintiff filed this action against Defendant for violation of USERRA and wrongful discharge under Oregon common law.  The matter was stayed between September 2004 and July 2006 pending Plaintiff's military service in Iraq.  On November 9, 2006, Defendant filed its Motion for Summary Judgment as to all of Plaintiff's claims.

On January 23, 2007, the Court heard oral argument on this Motion and resolved the parties' objections to alleged procedural and substantive violations of the Local Rules and Federal Rules of Evidence.  In accordance with its rulings at oral argument that the Declaration of former employee Kathy Taylor, documents pertaining to Keith McDonnell's employment with Defendant, and the Declaration of former employee Robert Cockhill are inadmissible, the Court will not consider those documents for purposes of resolving Defendant's Motion.

The Court took Defendant's Motion under advisement at the conclusion of oral argument.

9 - OPINION AND ORDER

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

**DISCUSSION**

Defendant moves for summary judgment as to all of Plaintiff's claims.

**I.    Claim One - USERRA.**

In Claim One, Plaintiff asserts Defendant violated USERRA by (1) failing to reemploy Plaintiff after he took military leave, (2) demoting Plaintiff after he took military leave, and (3) terminating Plaintiff after he took military leave.

**A.    USERRA Generally.**

USERRA prohibits employment discrimination against military personnel based on their military service. *Leisek*, 278 F.3d at 898.  In general, when membership or service in the military is a motivating factor in an employer's action, that action violates USERRA.  *Id.*  Plaintiff bears the initial burden to establish that a genuine issue of material fact exists as to whether his military service was a motivating factor.  *Id.* at 899-900.

To determine whether discriminatory intent was a motivating factor, the Court must consider the record as a whole and, in particular, the following four, nonexclusive factors: (1) proximity in time between an employee's military service and an adverse-employment action, (2) inconsistencies between an employer's proffered reasons for the action taken against an employee and other actions taken by the employer, (3) an employer's expressed hostility toward an employee who is engaged

11 - OPINION AND ORDER

in military service, and (4) disparate treatment of employees engaged in military service compared to others with similar work records or offenses.  *Id.* at 900.

If an employee can show by a preponderance of the evidence that his military status was a motivating factor underlying his employer's adverse-employment action, the employer can avoid liability "only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Id.* at 899.

### B.    Alleged Failure to Reemploy in Violation of USERRA.

Plaintiff contends Defendant failed to reemploy him after his June and July 2003 military leave in violation of USERRA. 38 U.S.C. § 4312(a) provides "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits" of USERRA provided the employee has complied with notice and other procedural requirements.

The Ninth Circuit Court of Appeals has not clarified the precise scope of § 4312 as to how long an employer must reemploy a uniformed service member after he returns from military leave. *See Leisek*, 278 F.3d at 900-01 (court discussed § 4312, but did not reach the issue of how long an employee must be reemployed). Other courts, however, have held § 4312 only requires immediate

reemployment after an employee takes military leave and does not prevent an employer from terminating the employee even if termination occurs on the day of reemployment. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303-04 (4th Cir. 2006). *See also Jordan v. Air Prod. and Chem., Inc.*, 255 F. Supp. 2d 1206, 1208 (C.D. Cal. 2002). These courts noted § 4312 only guarantees a service member immediate reemployment after military leave regardless of an employer's intent; *i.e.*, after the instant of reemployment, § 4312 no longer applies because at least two other USERRA sections prohibit adverse-employment actions based on animus to military personnel after reemployment. *See* 38 U.S.C. § 4311 (prohibits, among other things, retaliation for exercising USERRA rights); 38 U.S.C. § 4316(c)(prohibits discharge of a reemployed service member except for cause within a set period). *See also Francis*, 452 F.3d at 304.

In light of the text of § 4312, the Court agrees with *Francis* and *Jordan*: Section 4312 is only applicable when an employer fails to reemploy a uniformed service member.

Here the parties are clear that Plaintiff's reemployment claim is based only on § 4312. The record reflects Plaintiff was reemployed following his National Guard training for a period of at least one hour on the date of his return. Even though Plaintiff was demoted shortly after returning, Defendant's actions after reemploying Plaintiff do not violate § 4312. Thus,

13 - OPINION AND ORDER

the Court concludes Defendant is entitled to summary judgment as
to Plaintiff's claim that Defendant violated § 4312 by failing to
reemploy Plaintiff.

**C.    Plaintiff's Demotion.**

38 U.S.C. § 4311 provides:

> (a) A person who is a member of . . . uniformed
> service shall not be denied . . . reemployment,
> retention in employment, promotion, or any
> benefit of employment by an employer on the
> basis of that membership . . . or obligation.
>
> (b) An employer may not discriminate in
> employment against or take any adverse
> employment action against any person because
> such person (1) has taken an action to enforce
> a protection afforded any person under this
> chapter, (2) has testified or otherwise made a
> statement in or in connection with any
> proceeding under this chapter, . . . or (4) has
> exercised a right provided for in this chapter
> . . . .
>
> (c) An employer shall be considered to have
> engaged in actions prohibited–
>
> (1) under subsection (a), if the person's
> membership . . . in the uniformed services is a
> motivating factor in the employer's action,
> unless the employer can prove that the action
> would have been taken in the absence of such
> membership, application for membership,
> service, application for service, or obligation
> for service; or
>
> (2) under subsection (b), if the person's (A)
> action to enforce a protection afforded any
> person under this chapter, . . . or (D)
> exercise of a right provided for in this
> chapter, is a motivating factor in the
> employer's action, unless the employer can
> prove that the action would have been taken in
> the absence of such person's enforcement
> action, testimony, statement, assistance,

participation, or exercise of a right.

Plaintiff contends he was demoted from GL-II to GL because of his June and July leave for military training, which violates USERRA.  Defendant asserts Plaintiff cannot carry his initial burden under *Leisek* because his demotion was the result of his inadequate progress as a GL-II rather than any animus by Defendant toward persons serving in the military.  Defendant points out Plaintiff received generally negative feedback before his demotion, and the entire management team, several of whom were current and former military personnel, agreed Plaintiff should be demoted.  Even though Plaintiff's demotion and return from military leave occurred in close temporal proximity, Defendant argues that timing alone is insufficient to establish a violation of USERRA because Defendant decided to demote Plaintiff before he took military leave.  Defendant also notes it is a "5-Star" DOD employer and frequently recruits managers from the military, which severely undercuts any claim by Plaintiff that Defendant harbors animus or hostility against persons who serve in the military.

Finally, Defendant asserts Plaintiff cannot make a showing of disparate treatment because at least eight current or former military employees were promoted from GL-II to SGL and at least four nonmilitary employees were not promoted during that time.  Thus, Defendant argues no genuine issue of material fact exists

as to whether Plaintiff's military leave was a motivating factor
pursuant to *Leisek*.

The Court disagrees.  Viewed in the light most favorable to
Plaintiff, the record provides sufficient evidence to show
Plaintiff has carried his initial burden under *Leisek* to
establish by a preponderance of the evidence that a genuine issue
of material fact exists that Plaintiff's military status was a
motivating factor underlying Defendant's adverse actions.  *See
Leisek*, 278 F.3d at 899-900.

Plaintiff's demotion was temporally close to his demotion.
In fact, Plaintiff learned about his demotion on the morning of
his return from military leave.  Even though Defendant contends
its decision to demote Plaintiff was made before Plaintiff went
on leave, the record does not conclusively establish that
contention.

The record also contains evidence that could be interpreted
as indicative of animus toward military personnel, such as
Plaintiff's testimony that he was told the National Guard was
filled with "weekend warriors."  *See* Patton Depo. at 49:22-50:5,
121:14-123:15.  Moreover, Weist's comments indicate he thought
Defendant should recruit less from the military and more from
Oregon universities to reduce Defendant's exposure to military
personnel who frequently might be called on for service and have
to take military leave.  Patton Depo. at 42:10-46:4.

16 - OPINION AND ORDER

In addition, the record reflects inconsistencies in Defendant's proffered rationale. Although Defendant contends Plaintiff was demoted merely because of poor performance as a GL-II, Plaintiff testified he was told he was progressing towards an SGL promotion before he took leave and believed that was true until the end of April 2003. *See* Patton Decl. ¶ 4. *See also* Patton Depo. at 72:24-73:24, 239:5-19. In addition, Plaintiff's performance reviews were not so overwhelming that they negate any question about the motivation for Plaintiff's demotion.

Viewed in the light most favorable to Plaintiff, the record reflects a genuine issue of material fact exists as to whether Plaintiff's National Guard leave was a motivating factor in his demotion. Thus, as noted, Plaintiff has met his initial burden.

In response, Defendant asserts an affirmative defense under § 4311 that it would have demoted Plaintiff regardless of his military status. *See Leisek,* 278 F.3d at 899. Defendant points out the managers directly involved in the decision stated they would have demoted Plaintiff even if he were not in the military. *See, e.g.,* Steuart Aff. ¶¶ 4, 7.

In *Leisek*, however, the Ninth Circuit held an employer's affirmative defense under § 4311 can only be established if the employer shows as an "uncontroverted fact" that it would have acted as it did regardless of the employee's military status. *Id.* Here Plaintiff's testimony and the temporal proximity of his

17 - OPINION AND ORDER

demotion weigh against Defendant's arguments.  Thus, Defendant
has not established as a matter of undisputed fact that it would
have taken the same action in the absence of Plaintiff's military
status.  *Id.*

       The Court, therefore, concludes on this record a genuine
issue of material fact exists as to Plaintiff's claim under
§ 4311 that he was demoted in violation of USERRA.  Accordingly,
the Court denies Defendant's Motion as to this part of
Plaintiff's § 4311 claim.

       **D.    Plaintiff's Termination.**

       Plaintiff also asserts he was terminated on July 15, 2003,
for attempting to enforce his rights under USERRA.

       USERRA prohibits an employer from taking an adverse action
against an employee because of his military status or for
attempting to protect his rights under USERRA.  *See* 38 U.S.C.
§ 4311(a)-(b).  "An employer shall be considered to have engaged
in actions prohibited . . . [by USERRA] if the person's . . .
action to enforce a protection afforded any person under this
chapter is a motivating factor in the employer's action."
38 U.S.C. § 4311(c)(2).

       Defendant maintains the sole reason for Plaintiff's
termination was his sending the July 9, 2003, email to every PC
in the nation.  As noted, Defendant considered this act
detrimental behavior under its corrective-action policies and

18 - OPINION AND ORDER

concluded immediate termination was warranted.  Defendant contends, therefore, its actions do not give rise to an inference under the analysis in *Leisek* that Plaintiff's military leave was the motivating factor underlying Plaintiff's termination.  In the alternative, Defendant maintains it can establish as an uncontroverted fact that its action was not discriminatory.

Here the temporal sequence of events beginning with Plaintiff's demotion and ending with his termination supports an inference favorable to Plaintiff and, therefore, creates a genuine issue of material fact as to whether Plaintiff was terminated for attempting to protect his rights under USERRA. Plaintiff's email was sent on July 9, 2003.  On July 10, 2003, Plaintiff contacted an ESGR representative to help Plaintiff get reinstated to GL-II because he believed his demotion violated his rights under USERRA.  On July 11, 2003, a DOL representative also made contact with Defendant on Plaintiff's behalf.  Plaintiff asserts Defendant's representatives were uncooperative or rude on both occasions and, according to Plaintiff, Weist stated Plaintiff should not have brought "third-party representation" into the matter.  On July 14, 2003, Plaintiff's company email account was disabled, and Defendant made the decision to terminate Plaintiff's employment.  Plaintiff was terminated on July 15, 2003, and allegedly led out of the building in a humiliating manner.

19 - OPINION AND ORDER

Viewing the evidence in the light most favorable to Plaintiff, he has carried his initial burden under the *Leisek* test of establishing his attempt to enforce his USERRA rights was a motivating factor in his demotion. *Leisek*, 278 F.3d at 899-300.

Considering the temporal sequence of events leading to Plaintiff's termination, the Court finds Defendant has not established as a matter of undisputed fact that it would have terminated Plaintiff for sending his disruptive email in the absence of his military service or his diligent efforts to protect his rights under USERRA. *See Leisek*, 278 F.3d at 899.

The Court, therefore, concludes a genuine issue of material fact exists as to Plaintiff's § 4311 claim that he was terminated in violation of USERRA. Accordingly, the Court denies Defendant's Motion as to this part of Plaintiff's § 4311 claim.

## II. **Claim Two - Wrongful Discharge.**

In Claim Two, Plaintiff alleges he was wrongfully discharged in violation of Oregon common law. To state a wrongful-discharge claim under Oregon common law, "there must be a discharge, and that discharge must be wrongful." *McGanty v. Staudenraus*, 321 Or. 532, 551 (1995)(internal quotation omitted). Because Plaintiff's termination is undisputed, the Court limits its analysis to the second element.

20 - OPINION AND ORDER

**A.   <u>Wrongful Discharge Generally.</u>**

Under Oregon common law, an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement. *Patton v. J. C. Penney Co.*, 301 Or. 117, 120 (1986). The tort of wrongful discharge is a narrow exception to this rule. *See Sheets v. Knight*, 308 Or. 220, 230-31 (1989). Oregon courts have recognized two circumstances that give rise to this tort: 1) discharge for performing a public duty or fulfilling a societal obligation and 2) discharge for exercising an important job-related right. Examples of the first category include discharge for serving on jury duty, *Nees v. Hock*, 272 Or. 210 (1975); for reporting patient abuse at a nursing home, *McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or. App. 107 (1984); and for refusing to sign a false and potentially defamatory statement about a coworker, *Delaney v. Taco Time International*, 297 Or. 10 (1984). Examples of the second category include discharge for resisting sexual harassment by a supervisor, *Holien v. Sears, Roebuck and Co.*, 298 Or. 76 (1984), and for filing a workers' compensation claim, *Brown v. Transcon Lines*, 284 Or. 597 (1978).

Even so, a wrongful-discharge claim is not available if an existing remedy adequately protects the public interest in question. *Draper v. Astoria Sch. Dist. No. 1C*, 995 F. Supp. 1122, 1130-31 (D. Or. 1998).

B.    **Plaintiff's Wrongful-Discharge Claim.**

Defendant does not contest that a termination motivated by animus against an employee who takes leave for military service would fall under the category of a discharge for performing an important public duty. *Id.* at 1127. Indeed, the tort of wrongful discharge exists in part to prevent burdening the exercise of important public duties. *See, e.g., Nees*, 272 Or. at 220 ("If an employer were permitted with impunity to discharge an employee for fulfilling her obligation of jury duty, the jury system would be adversely affected."). Instead, Defendant argues USERRA remedies are sufficient to preclude a common-law claim for wrongful discharge.

The Court notes USERRA permits an aggrieved claimant to seek reinstatement and the recovery of "lost wages or benefits" arising from an employer's violation of the Act. If the claimant proves the employer acted willfully, it appears the claimant may recover as liquidated (and presumably additional) damages the same sum. *See* 38 U.S.C. § 4323(d)(1)(A)-(C). Some courts have held USERRA's liquidated-damages provision, which is predicated on willfulness, constitutes a punitive, legal remedy. *See Duarte v. Agilent Tech., Inc.*, 366 F. Supp. 2d 1036, 1037-38 (D. Colo. 2005)(notes decisions by several courts that liquidated damages based on willfulness constitutes a punitive, legal remedy).

According to Plaintiff, however, USERRA does not provide an

22 - OPINION AND ORDER

adequate statutory remedy because it does not expressly allow recovery for any noneconomic damages and emotional losses resulting from the wrongful discharge or for a full range of punitive damages.  In this case, Plaintiff asserts he suffered humiliation, depression, and anxiety as a result of his termination.  Because USERRA does not expressly provide a remedy for these injuries, Plaintiff argues his common-law claim is the only meaningful way to achieve fair compensation.

As the court in *Draper* noted, whether a wrongful-discharge claim is available does not turn on whether the claimant's statutory remedy is the best possible remedy.  The court merely must determine whether the remedy is adequate to protect the right at issue.  *Draper*, 995 F. Supp. at 1134 (citing *Carlson v. Crater Lake Lumber Co.*, 103 Or. App. 190, 193 (1990)).  The cases in which a remedy has been found inadequate by the Oregon Supreme Court generally involve statutory remedies that leave a significant portion of a claimant's damages uncompensated.  In *Holien*, for example, the Oregon Supreme Court held that remedies of reinstatement, back pay, and injunctive relief can "fail to capture the personal nature of the injury done to a wrongfully discharged employe[e]" because those remedies do not compensate "the plaintiff for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care.  Legal as well as equitable remedies are needed

to make the plaintiff whole." 298 Or. at 97. For the same reason, Plaintiff's remedies under USERRA do not appear to be adequate. Although Plaintiff could be reinstated and recover back pay and benefits if he successfully proves his USERRA claims, there does not appear to be any statutory basis to compensate Plaintiff for the highly personal nature of his claimed injuries. Moreover, it is not clear whether Plaintiff's right to "liquidated damages" provides any meaningful route to adequate compensation for these types of alleged losses.

On this record and at this stage of the case, the Court cannot say Defendant has established that Plaintiff has an adequate statutory remedy, and, therefore, the Court concludes Defendant is not entitled to summary judgment as to Plaintiff's Claim Two.


<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendant's Motion to the extent that Defendant moves for summary judgment against Plaintiff's Claim One for violation of USERRA based on Defendant's failure to reemploy Plaintiff after he took military leave, **DENIES** Defendant's Motion to the extent that Defendant moves for summary judgment against Plaintiff's Claim One for violation of USERRA based on Plaintiff's demotion and/or termination, and **DENIES** Defendant's Motion as to Plaintiff's

24 - OPINION AND ORDER

Claim Two.

IT IS SO ORDERED.

DATED this 21st day of March, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge